[No. E053738. Fourth Dist., Div. Two. Aug. 14, 2012.]

CITY OF CORONA, Plaintiff and Respondent, v.
LISTON BRICK COMPANY OF CORONA, Defendant and Appellant.

COUNSEL

Law Offices of William B. Hanley and William B. Hanley for Defendant and Appellant.

Best Best & Krieger, Mark A. Easter and Kira L. Klatchko for Plaintiff and Respondent.

OPINION

RICHLI, J.—In this eminent domain proceeding, the City of Corona (the City) sought to acquire certain property owned by Liston Brick Company of Corona (Liston). The trial court ruled that all of Liston's evidence of valuation was inadmissible under Evidence Code section 822, subdivision (a). That subdivision provides that, in an eminent domain proceeding, six specified categories of evidence are "inadmissible . . . and shall not be taken into account as a basis for an opinion as to the value of property . . . ."

In this appeal, Liston contends that, even assuming its evidence was otherwise inadmissible under Evidence Code section 822, subdivision (a), it should have been allowed to use it in its cross-examination of the City's valuation expert. It relies on *State of Cal. ex rel. State Pub. Wks. Bd. v. Stevenson* (1970) 5 Cal.App.3d 60 [84 Cal.Rptr. 742]. We conclude, however, that *Stevenson* does not create a "cross-examination exception" to Evidence Code section 822, subdivision (a). At most, it merely allows a party to an eminent domain proceeding to impeach an expert with a prior inconsistent valuation *by that expert*. Liston did not offer any such prior inconsistent valuation. Hence, we will affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Liston owns approximately 10.75 acres of land at Cajalco Road and Temescal Canyon Road in Corona (the Liston property).

In 2005, the City filed this eminent domain proceeding against Liston[1] to acquire certain easements over certain portions of the Liston property. Specifically, the property that the City was seeking (the subject property) consisted of a storm drain easement, a landscape easement, slope easements,

---

[1] Other named defendants either (1) filed a disclaimer, (2) were dismissed, or (3) had their default entered.

temporary construction easements, and a right of way, covering a total of approximately 1.45 acres. The taking was for the purpose of road widening and related improvements.

The City deposited $120,200 as probable compensation. In 2008, Liston withdrew the City's deposit, thus waiving any right to contest the taking. (See Code Civ. Proc., § 1255.260.)

Meanwhile, the Riverside County Transportation Commission (the RCTC) became interested in acquiring the Liston property for use in several transportation projects.

In February 2006, at the request of the RCTC, Robert Shea Perdue Real Estate Appraisal rendered an appraisal of the entire Liston property (the Perdue appraisal). It valued the Liston property at $20 per square foot.

In August 2006, the RCTC and Liston entered into a purchase and sale agreement (the RCTC agreement) for the remainder of the Liston property— i.e., the Liston property minus the subject property. However, the RCTC agreement also gave the RCTC an option to buy the subject property, exercisable if the City failed to acquire the subject property in this action. The option set a price for the subject property of $21 per square foot.

Liston designated only one expert on valuation—Craig Hall, a vice-president of Liston. Hall's opinion was based on the RCTC agreement.

The City filed the following two motions in limine:[2]

1. To exclude the Perdue appraisal, as well as any testimony by Hall based on it.[3] The City argued, among other things, that the Perdue appraisal was inadmissible under Evidence Code section 822, subdivision (a)(4).

2. To exclude the RCTC agreement, as well as any testimony by Hall based on it. The City argued, among other things, that the RCTC agreement was inadmissible under Evidence Code section 822, subdivision (a)(1) and/or subdivision (a)(2).

In its written opposition, Liston did not explain why Evidence Code section 822 did not apply. At the argument on the motions, however, Liston argued

---

[2] The City also filed a third motion in limine, to exclude all testimony by Robert Shea Perdue. In the trial court, Liston did not oppose this motion; on appeal, it does not argue that the trial court erred by granting it.

[3] The motion also sought to exclude certain communications between Liston and some potential buyers of the Liston property. Liston has not argued, in the trial court or on appeal, that this evidence was admissible.

that it should be allowed to cross-examine the City's expert witness regarding the Perdue appraisal and the RCTC agreement.

After hearing argument, the trial court granted both motions. It specifically ruled that the Perdue appraisal and the RCTC agreement were not admissible for purposes of cross-examination.

Both sides agreed that the trial court's ruling made it impossible for Liston to dispute the City's expert's valuation. The parties therefore stipulated to a judgment allowing the City to condemn the subject property and setting just compensation at $181,000 (less than $3 per square foot). The stipulation expressly preserved Liston's right to appeal the judgment.

The trial court entered judgment in accordance with the stipulation.

II

USING EVIDENCE EXCLUDED BY EVIDENCE CODE SECTION 822 FOR PURPOSES OF CROSS-EXAMINATION

■ Evidence Code sections 810 through 824 "provide[] special rules of evidence applicable to any action in which the value of property is to be ascertained." (Evid. Code, § 810, subd. (a).) This includes eminent domain proceedings. (Legis. Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 810, p. 160.)

Under these rules, the value of property can be shown *only* by the opinion of a qualified witness. (Evid. Code, § 813, subd. (a)(1).) The witness's opinion may be "based on matter perceived by or personally known to the witness or made known to the witness at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion as to the value of property . . . , unless a witness is precluded by law from using such matter as a basis for an opinion." (Evid. Code, § 814.) Under certain circumstances, it may be based on a "sale or contract to sell and purchase which included the property or property interest being valued or any part thereof . . . ." (Evid. Code, § 815.)

■ Evidence Code section 822, subdivision (a), however, carves out six categories of evidence which, "[i]n an eminent domain or inverse condemnation proceeding," are "inadmissible as evidence and shall not be taken into account as a basis for an opinion as to the value of property . . . ." By its terms, Evidence Code section 822, subdivision (a) applies "notwithstanding" Evidence Code sections 814 and 815.

One excluded category is "[a]n opinion as to the value of any property or property interest other than that being valued." (Evid. Code, § 822, subd. (a)(4).) "This is known as the rule against appraising the comparable. An appraiser cannot determine the value of an adjacent property and use it as a comparable." (11 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 30A:26, p. 30A-64.) The City argued below that this category applied to the Perdue appraisal.

Another excluded category is "[t]he price or other terms and circumstances of an acquisition of property or a property interest if the acquisition was for a public use for which the property could have been taken by eminent domain." (Evid. Code, § 822, subd. (a)(1).) " '[T]he price paid under the circumstances of such a sale is not a reasonable or fair test of market value.' " (*Ventura County Flood Control Dist. v. Campbell* (1999) 71 Cal.App.4th 211, 222 [83 Cal.Rptr.2d 725].)

A third excluded category is "[t]he price at which an offer or option to purchase or lease the property or property interest being valued or any other property was made, or the price at which the property or interest was optioned, offered, or listed for sale or lease . . . ." (Evid. Code, § 822, subd. (a)(2).)

The City argued below that both of these latter two categories applied to the RCTC agreement.

In its opening brief, Liston does *not* contend that the Perdue appraisal or the RCTC agreement was *not* excluded by Evidence Code section 822. Accordingly, it has forfeited any such contention. (*In re Marriage of LaMoure* (2011) 198 Cal.App.4th 807, 817 [132 Cal.Rptr.3d 1] [Fourth Dist., Div. Two].)

■ Nevertheless, in its reply brief, Liston belatedly asserts that the Perdue appraisal was not excluded by Evidence Code section 822, subdivision (a)(4) because the Perdue appraisal "included" the subject property. Even if we were to overlook Liston's forfeiture, we would disagree. Evidence Code section 822, subdivision (a)(4) applies to an opinion as to the value of different "property" *or* a different "property interest." Thus, it implicitly but necessarily excludes an opinion as to the value of a *different property interest* in the *same property*.

The Perdue appraisal related to a fee simple interest in the entire 10.75-acre Liston property. The City, however, was seeking to acquire easement interests over only 1.45 acres of the Liston property. Accordingly, the Perdue appraisal represented an opinion as to the value of a different "property interest."

Also in its reply brief, Liston claims that, even if the RCTC agreement was otherwise inadmissible under Evidence Code section 822, Liston's own expert, Craig Hall, could rely on it in forming his opinion. This contention, too, has been forfeited. In any event, it flies in the face of the wording of Evidence Code section 822, subdivision (a), which provides that any evidence in any of its six categories "shall not be taken into account as a basis for an opinion . . . ."

Liston's main contention is that, even if the Perdue appraisal and the RCTC agreement were otherwise inadmissible under Evidence Code section 822, it was entitled to use them in its cross-examination of the City's expert.

As the trial court reasoned, this contention, too, conflicts with the wording of Evidence Code section 822, subdivision (a), which flatly states that any evidence in any of its six categories is "inadmissible." One early commentator understood this to mean that "the excluded items are inadmissible *for any purpose*. Therefore, improper matters cannot come in on direct examination under the guise of showing the scope of the witness's investigation *or to test the depth of his knowledge on cross-examination*." (Carlson, *Statutory Rules of Evidence for Eminent Domain Proceedings* (1966) 18 Hastings L.J. 143, 154, italics added.)

Liston, however, relies on *State of Cal. ex rel. State Pub. Wks. Bd. v. Stevenson, supra*, 5 Cal.App.3d 60. There, the state's expert valued the building at issue at $8 per square foot. On cross-examination, he was asked about his previous appraisal of another building nearby. He admitted that he had valued that building at $16 per square foot. (*Id.* at pp. 63–64.)

On appeal, the state argued that "the cross-examination violated Evidence Code, section 822 . . . ." (*State of Cal. ex rel. State Pub. Wks. Bd. v. Stevenson, supra*, 5 Cal.App.3d at p. 64.) The appellate court disagreed. It noted that, in cases decided before the adoption of Evidence Code section 822, it had been held that evidence of the value of a nonsubject property, though inadmissible for valuation purposes, was admissible "to impeach the credibility of the expert valuation witness . . . ." (*Stevenson*, at p. 65.) It reasoned that Evidence Code section 822 was not intended to change this rule: "Plaintiff would have us construe 'inadmissible in evidence' in the first sentence as being all-encompassing. . . . We are convinced, however, that the Legislature had no intention of changing existing law. All of the Evidence Code provisions relating to eminent domain were the work of the California Law Revision Commission, and there is not a word in any of that body's reports to indicate either that it was its intent to abolish a rule historically well settled or to emasculate a principle firmly entrenched as a fundamental part of the right of cross-examination." (*Stevenson*, at pp. 64–65.) It concluded, "To construe and

apply section 822 . . . in the manner urged by plaintiff would effectually deny to condemnees the right to impeach plaintiff's appraisal witnesses." (*Id.* at p. 65.)[4]

By contrast, in *People ex rel. Dept. Pub. Wks. v. Amsden Corp.* (1973) 33 Cal.App.3d 83 [109 Cal.Rptr. 1], certain defendants argued "that the trial court erroneously restricted cross-examination of the State's expert . . . on an offer made for comparable property." (*Id.* at p. 89.) The court held, however, that this was proper, because "Evidence Code section 822 . . . prohibits cross-examination on a mere offer . . . ." (*Ibid.*) It also observed that "Evidence Code section 822 . . . clearly supersedes [contrary] cases . . . decided before the January 1, 1967, effective date of the Evidence Code." (*Ibid.*)

Interestingly, the Law Revision Commission itself later disagreed with *Stevenson.* In 1978, on the recommendation of the commission, the Legislature made a minor amendment to what was then Evidence Code section 822, subdivision (c) (see now Evid. Code, § 822, subd. (a)(3)), dealing with the admissibility of certain property-tax-related information. The amendment did not expressly relate to the admissibility (or inadmissibility) of evidence for purposes of cross-examination. Nevertheless, the commission took that opportunity to add the following comment: "Section 822 does not prohibit cross-examination of a witness on any matter precluded from admission as evidence if such cross-examination is for the limited purpose of determining whether a witness based an opinion in whole or in part on matter that is not a proper basis for an opinion; *such cross-examination may not, however, serve as a means of placing improper matters before the trier of fact.*" (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code, *supra,* foll. § 822, pp. 190–191, italics added.)

In *Stevenson,* the expert's appraisal of the other property was *not* offered to show that he had based his valuation of the property at issue on any improper matter. Rather, it was offered to place his appraisal of the other property—a matter otherwise excluded under Evidence Code section 822—before the trier of fact. Thus, the commission's comment conflicts with *Stevenson.* We cannot help but think that its comment was intended to reject *Stevenson* and to indicate that Evidence Code section 822 was indeed intended to change the law.

We recognize that " ' "[w]hen the Legislature amends a statute without changing those portions . . . that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced

---

[4] *Stevenson* was followed, on substantially similar facts, in *City of Los Angeles v. Waller* (1979) 90 Cal.App.3d 766, 774–776 [154 Cal.Rptr. 12].

in the previous judicial construction." ' [Citation.]" (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 433–434 [2 Cal.Rptr.3d 699, 73 P.3d 554].) Here, however, the Law Revision Commission's comment rebuts this presumption.

█ "We give the California Law Revision Commission comments 'substantial weight' in construing the Evidence Code [citation] . . . ." (*People v. Riccardi* (2012) 54 Cal.4th 758, 824 [144 Cal.Rptr.3d 84].)

█ Admittedly, the commission made its comment in 1978, not in 1965, when Evidence Code section 822 was originally enacted. However, "[a]lthough an expression of legislative intent in a later enactment is not binding upon a court in its construction of an earlier enacted statute, it is a factor that may be considered. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 492 [30 Cal.Rptr.3d 823, 115 P.3d 98].)

█ We believe that, if *Stevenson* is good law at all, it is limited to the situation presented in that case—where the *same expert* has previously rendered an inconsistent valuation of other property. In that situation, the prior inconsistent valuation may be admitted not so much for its truth as to cast doubt on the expert's opinion. *Stevenson* does *not* stand for the proposition that an expert can be cross-examined about *another* expert's valuation of other property. Nor does it stand for the proposition that an expert can be cross-examined about an acquisition of a property for a public use, in violation of Evidence Code section 822, subdivision (a)(1), or about a mere option on a property, in violation of Evidence Code section 822, subdivision (a)(2). Evidence in these categories is legally irrelevant to the fair market value of the property at issue. Excluding such evidence does not deny the right of cross-examination; likewise, it does not manipulate evidentiary rules in any way that subverts the right to just compensation.

█ In this case, consistent with the commission's comment, Liston could ask the City's expert whether he relied on the Perdue appraisal or the RCTC agreement. However, in light of the City's strenuous opposition to the admission of these documents, it goes without saying that he did not. Liston could not use these documents on cross-examination in any other manner.

We therefore conclude that the trial court properly excluded the Perdue appraisal and the RCTC agreement.

## III

## DISPOSITION

The judgment is affirmed. The City is awarded costs on appeal against Liston.

McKinster, Acting P. J., and King, J., concurred.